JENNIE SMITH, Appellant, v. JAMES K. TYLER, Respondent.

Kansas City Court of Appeals, April 30, 1894.

1. **Principal and Agent:** LOYALTY OF AGENT: DUAL AGENCY. The law demands the entire loyalty of the agent to his principal and will not permit him to occupy a position of temptation, even, nor can he act as the agent for both seller and purchaser. And should the agent transgress this rule he is chargeable as trustee with all profits on account thereof.

2. ———: SALE OF REAL ESTATE: PURCHASER. If an agent for the sale of real estate use a third party as a mere conduit to deceive his principal and pass the title to himself equity treats the transaction, as in substance it is, a sale to the agent, and holds him responsible for all the profits. But if the third person is a *bona fide* purchaser and subsequently sells the same property to the agent, the principal has no cause of complaint. On the facts of this case the sale is *held bona fide.*

*Appeal from the Johnson Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Fulkerson & Hart* and *S. T. White* for appellant.

(1) Tyler, as plaintiff's agent to sell her land, might not, so long as this relation existed, buy the land he had undertaken to sell. This rule admits of no qualification. Mechem on Agency, secs. 454, 455, 456, 461, 469, 470, 471, 652; Story on Agency [7 Ed.], secs. 210, 211; Rorer on Judicial Sales [2 Ed.], secs. 413, 414, 415, 416; *De Voue v. Fanning*, 2 Johns. Ch. 252; *Thornton v. Irwin*, 43 Mo. 153; *Grumley v. Webb*, 44 Mo. 444; *Murdoch v. Milner*, 84 Mo. 96; *Shaw v. Shaw*, 86 Mo. 594; s. c., 14 Mo. App. 580; *Dutton v. Willner*, 52 N. Y. 312; *Gardner v. Ogdon*, 22 N. Y. 327; *Bain v. Brown*, 56 N. Y. 285; *Oliver v. Piatt*, 3 How. 333; *Michoud v. Girod*, 4 How. 503. (2) The granting of an option to a third party did not discharge defendant from the trust he had assumed. He can not do indirectly what the law forbids he should do directly. (3) Having purchased the land he had undertaken to sell, defendant became a trustee by equitable construction, and this, too, irrespective of any question of fraud. Bispham's Principles of Equity [4 Ed.], sec. 94; *Michoud v. Girod*, 4 How. *loc. cit.* 556, citing with approval *De Voue v. Fanning*. (4) The proposition of sale submitted to plaintiff was the payment of cash, and no sale was completed until its terms were complied with. It is not claimed that Stepper even attempted, or intended to comply with the terms of sale, and no sale was completed until after defendant had received the quitclaim deed from Stepper and had remitted the purchasing price out of his own funds. (5) As trustee *ex maleficio* defendant was liable to plaintiff for whatever he realized from the sale to Royer in excess of the amount accounted for in the sale alleged to have been made to Stepper, but in fact made to himself. *Bent v. Priest*, 86 Mo. 475; *Jacobus v. Munn*, 27 N. J. Equity, 48.

*J. W. Suddath* for appellee.

(1) Appellant's proposition that defendant as plaintiff's agent, might not, so long as that relation existed, buy the land from her, directly or indirectly, is correct law, but has no application to the facts in issue. (2) If we admit the proposition "that the granting of an option to a third party would not discharge defendant from the trust he had assumed," it has no application here, as he granted no option, but made an unconditional sale, as far as Stepper and plaintiff were concerned. (3) If defendant had purchased the land he undertook to sell, directly or indirectly from plaintiff, he would have become an equitable trustee irrespective of any question of fraud; but as he purchased from one who was the *bona fide* purchaser from plaintiff, this has no application. (4) Although the proposition of sale submitted to plaintiff was the payment of cash, yet the sale was complete as soon as plaintiff accepted the proposition and delivered the deeds, even if Stepper and no one for him had ever paid the cash. True, a vendor's lien would have arisen in favor of plaintiff. Suppose Stepper after accepting the deed and before taking it out of Tyler's hands, had sold it to me for $100 advance, and directed me to pay him the $100 and go and pay the purchase price to Tyler, less the $100 and I had done so would not it have been a sale to Stepper? (5) If the sale was in fact to Tyler, and Stepper was only a nominal purchaser, used as a blind, true then as trustee *ex maleficio* he would be liable to plaintiff for whatever he realized from the sale to Royer in excess of the amount accounted for in the sale to Stepper, less expenses and compensation; but as Stepper was a real purchaser this principle has no application.

GILL, J.—This is a suit in equity whereby the plaintiff seeks to charge the defendant with an alleged profit he is said to have realized in the purchase and sale of certain land in Johnson county. The plaintiff, Mrs. Smith, resided in the state of Ohio and, with her sister, owned two hundred and forty acres of land in Johnson county, Missouri. Defendant Tyler was a real estate agent at Warrensburg. In the year 1887, Mrs. Smith and her sister put the land into the hands of Tyler to rent or sell. It seems to have been, mostly, what is termed low bottom land and subject to frequent overflows, so much so indeed, that it was only occasionally that crops could be raised. The rents were small and the proceeds to Mrs. Smith so meager that she became anxious to sell, and defendant was pressed to find a purchaser. After a delay of two years, and (if defendant is to be believed) after much effort, Tyler on November 18, 1889, by letter submitted an offer of a party for the land at $10 per acre, or $1,200 for plaintiff's share. Mrs. Smith answered by letter dated November 20, accepting the proposition. Thereupon Tyler made out the deed at Warrensburg to one Stepper, the purchaser, sent it forthwith to the plaintiff in Ohio and it was returned duly executed to Tyler on or about December 4, 1889. The $1,200, less commission, cost of abstract, etc., was duly forwarded to Mrs. Smith and her deed to Stepper was filed for record.

On the same day (December 4, 1889) Dr. Stepper, Mrs. Smith's grantee, conveyed the same land to defendant Tyler and the deed went to record at about the same time as the deed of Smith to Stepper. About six months thereafter Tyler sold or traded the land at a price in excess of the consideration received by Mrs. Smith, and it is this excess (alleged to be $1,200) that is the subject of this action.

The substance of plaintiff's petition is, that the defendant violated his duty to plaintiff, and himself became the real purchaser of the land; "that the said George C. Stepper was never in fact the purchaser of said land, that the relation of the said Stepper to each of the conveyances herein above set forth was that of a mere nominal party; that the conveyances aforesaid were in fact the successive steps whereby the defendant covertly, by indirection and deceit, and in abuse of the trust and confidence reposed in him as plaintiff's agent wrongfully and fraudulently sought to acquire for his own benefit plaintiff's interest in said land," etc. And the court is asked to require said defendant to account for the proceeds arising from such subsequent sale.

The answer denies all fraud in making the sale of plaintiff's land; alleges in detail defendant's *bona fide* efforts to make a sale; that said Stepper was not a nominal, but a good faith purchaser in his own right, but that after said Stepper made said purchase he became dissatisfied therewith and sold the same to defendant for the same price he had paid plaintiff therefor.

The court heard the evidence, decided all the issues in defendant's favor, and plaintiff brought the case here by appeal.

There is no principle of the law more universally enforced by the courts than that demanding the entire loyalty of the agent to the interests of his principal. So careful is the law in guarding the abuse of this relation, that the agent will not be allowed to occupy a position of *temptation* even to commit wrong against the one who has employed him. For this reason, a party can not act as agent for the seller and at the same time be the purchaser. Such transactions are void as to the principal unless ratified by him with full knowledge of all the circumstances. And should the agent

transgress this rule, and thus acquire property belonging to his principal, he will be understood as holding it, and all the profits made on account thereof, as trustee for the benefit of the principal. Story on Agency [9 Ed.], sec. 210; Mechem on Agency, sec. 454, *et seq.*

The law, then, applicable to this case may be stated in this way: If defendant Tyler, while employed by Mrs. Smith to sell her land, undertook to acquire the property by a sale to himself; and to that end used Stepper as a mere conduit or blind to deceive his principal; in other words, if Stepper was only a nominal vendee while Tyler, the agent, was intended as the real purchaser—then the courts should treat the transaction as it was in substance, a sale by the agent to himself, and hold him responsible to his principal for all profits which subsequently accrued. But if, on the other hand Stepper was in fact a purchaser in good faith and on his own account, and subsequently sold the same property to Tyler, then the transaction must be upheld and plaintiff has no case.

It must be conceded that, on the face of things, without explanation, a case of strong suspicion is made against the good faith of defendant Tyler. He received the deed from Smith to Stepper on the third or fourth day of December—at all events, it was placed on record December 4; and at the same time a quitclaim deed from Stepper to Tyler, with a deed of trust back to secure $1,800 (Tyler to use of Stepper), was also placed on record. These are circumstances supporting the claim that Stepper was a mere "straw man," used by Tyler to get the property out of Mrs. Smith and her sister; that Tyler was the real purchaser, and that Stepper was merely loaning Tyler a portion of the purchase price.

However, this is all fully explained by the testimony of Tyler and Stepper; and, if they are to be credited, there can be no doubt as to the entire good faith and legality of the transaction—that it was a *bona fide* sale to Stepper, followed by a subsequent purchase by Tyler. It appears, not only from the sworn statements of Tyler and Stepper, but from the testimony of not less than two other reputable witnesses, that Tyler made strenuous efforts to sell the land at figures in advance of $10 per acre, and that he tried to induce other men of means at Warrensburg to buy the property at that price. Stepper and Tyler both testify that Stepper (known to be one dealing in lands) was induced to investigate the property and make a bid on the same; that Stepper was in doubt as to its being worth so much as $10 per acre, and that, while in this state of doubt, the defendant said he would purchase it himself at that figure if he only had the money, and that, if Dr. Stepper got dissatisfied, that he (Tyler) would take it off his hands; that, relying on the good judgment of Tyler and his guaranty, Stepper authorized Tyler to submit the cash offer of $10 per acre; that this offer was sent to Mrs. Smith, in Ohio, and she accepted the same. Dr. Stepper further swears that, after thus binding himself to purchase the property, and during the two weeks or more that intervened between that date and the closing of the sale by deed, he (Stepper) made diligent efforts to find a purchaser for an advance, but failed; and that, when the deed from Mrs. Smith to him was ready for delivery, he had concluded to accept Tyler's offer, and so advised him, and, to put it in the power of Tyler to take the land, he (Stepper) agreed to give him time on $1,800 of the purchase money, he (Tyler) paying ten per cent. interest. Stepper explicitly declares that he was not acting as a nominal purchaser for Tyler, but in his own

right, and, if he had found some one willing to take the property off his hands at a profit, such gain would have been his own, and Tyler would have had no interest in the same.

This and other evidence (which we can not well repeat in the brief space of an opinion) fully sustains the finding of the lower court that defendant Tyler did not betray the interests of his client; that Dr. Stepper, and not the defendant, was in fact the real purchaser of the land from Mrs. Smith. There were some circumstances and some oral testimony tending to impeach Mr. Tyler's good faith in the matter, and tending to prove that he, and not Stepper, was the real vendee; yet the preponderance of the evidence is in favor of the defendant. Anyhow, since the trial judge had the witnesses before him, and was better prepared than we to pass on their credibility, we feel inclined to defer to his finding.

A discussion of the cases cited by plaintiff's counsel will serve no good purpose. In the beginning of this opinion we have noticed all the law that can find any application here; and these decisions to which our attention has been called are only valuable in their conformity with such recognized law.

The judgment is for the right party and will be affirmed. All concur.